IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARFIELD AURORA I, LLC, an Illinois
Limited Liability Company; and GARFIELD
AURORA II, LLC, an Illinois Limited
Liability Company,

        Plaintiffs,

   v.

GREATER NEW YORK MUTUAL
INSURANCE COMPANY, a New York
Corporation,

        Defendant.

No. 21 C 5582

Jeffrey T. Gilbert
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER**

This is an insurance coverage dispute. Plaintiffs Garfield Aurora I LLC and Garfield Aurora II LLC ("Garfield Plaintiffs" or "Plaintiffs") seek insurance coverage for property damage, physical loss of property, and loss of business income, among other things, for a commercial building (the "Building") they own that was insured with an at-risk insurance policy (the "Policy") issued by Defendant Greater New York Mutual Insurance Company ("GNY Mutual"). Garfield Plaintiffs filed a three-count complaint seeking a declaratory judgment that the insurance claim they filed for alleged damages to the Building, property loss, and loss of business income is covered by the Policy issued by GNY Mutual. Garfield Plaintiffs also filed a claim for breach of contract and seek statutory penalties pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, for GNY Mutual's allegedly vexatious and unreasonable conduct in the investigation and denial of Plaintiffs' insurance claim.

1

GNY Mutual denies liability and asserts: (1) Garfield Plaintiffs did not comply with material terms and conditions in the Policy that are conditions precedent to bringing this lawsuit; (2) Garfield Plaintiffs do not establish a prima facie case that they are entitled to insurance coverage for the claim they submitted because they have not satisfied their burden to establish there was a fortuitous event on June 28, 2019 that caused damage to the Building; and (3) even if Garfield Plaintiffs could establish a prima facie case for insurance coverage under the Policy, the damages incurred at the Building and the alleged losses are excluded under specific terms and conditions in the Policy at issue.

Presently before the Court are GNY Mutual's Motion for Summary Judgment [152] and Garfield Plaintiffs' Motion for Partial Summary Judgment [153].[1] The parties filed cross-motions for summary judgment, including simultaneous motions with supporting memoranda of law, response briefs, and replies.[2] The parties' briefs contain overlapping arguments and cross-referenced statements of facts and

---

[1] On February 2, 2022, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). *See* Joint Consent [23].

[2] GNY Mutual's briefing includes the following: (1) GNY's Motion for Summary Judgment ("GNY Mutual's Motion") [152]; Defendant's Amended Memorandum of Law in Support of its Motion for Summary Judgement ("GNY's Am. Memo. of Law") [158]; (2) Plaintiffs' Response to Defendant's Motion for Summary Judgement ("Pls' Opposition Brief") [174]; and (3) Defendant's Reply in Support of its Motion for Summary Judgment ("GNY's Reply") [181]. Garfield Plaintiffs' briefing includes the following: (1) Plaintiffs' Motion for Partial Summary Judgement ("Plaintiffs' Motion") [153]; Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Pls' Memo. of Law") [154]; (2) Defendant's Response in Opposition of Plaintiffs' Partial Motion for Summary Judgment and Motion to Strike Hearsay Statements of Plaintiffs/Giordano/Basara ("GNY's Opposition Brief") [177]; and (3) Plaintiffs' Reply in Support of Motion for Partial Summary Judgment ("Pls' Reply") [182].

additional statements of facts.[3] Due to the common issues, overlapping arguments, and cross-referenced facts, the Court addresses the parties' cross-motions for summary judgment together for the sake of judicial economy. *See Wilson v. Baptiste*, 2016 WL 3878125, at \*2 (N.D. Ill. July 18, 2016) (citing *Bloodworth v. Vill. of Greendale*, 475 Fed. Appx. 92, 95 (7th Cir. 2012) ("Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute."); *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 453 Fed. Appx. 650, 653-54 (7th Cir. 2011) (holding that the district court was "obligated to consider" materials attached to other party's cross-motion before ruling on cross-motions).

For the reasons discussed in this Memorandum Opinion and Order, the Court grants GNY Mutual's Motion for Summary Judgment [152] and denies Garfield Plaintiffs' Motion for Partial Summary Judgment [153].

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[3] In their Response to Defendant's Motion for Summary Judgment [174], Garfield Plaintiffs specifically incorporate the Local Rule 56.1 Statement of Facts [155] they filed in support of their Motion for Partial Summary Judgment [153] and the arguments they made in their Memorandum of Law in Support of their Motion for Partial Summary Judgment [154]. Pls' Opposition Brief [174], at 2. Garfield Plaintiffs also specifically "adopt and incorporate herein the Statement of Facts set forth in their Motion for Summary Judgment." Pls' Additional Statement of Material Facts [175], at ¶1.

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties" (*id.* at 247) or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). Once the party moving for summary judgment demonstrates the absence of any disputed issues of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

When resolving a motion for summary judgment, the Court must construe all evidence and draw all reasonable inferences in the non-movant's favor. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). The Court, however, makes "only reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014); *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (holding that the non-movant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture"). For cross-motions for summary judgment, the Court must take "the facts in the light most

favorable to the non-movant, first for one side and then for the other." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 648 (7th Cir. 2003). Because this case is before the Court on the parties' cross-motions for summary judgment, the factual record is framed largely by their statements of material facts and responses thereto. The Court, however, retains discretion to "consider other materials in the record" when appropriate. FED. R. CIV. P. 56(c)(3).

### REQUIREMENTS OF LOCAL RULE 56.1

Northern District of Illinois Local Rule 56.1 prescribes the procedures and format that parties must comply with when filing motions for summary judgment. Under this rule, the party seeking summary judgment must include with its motion a statement of material facts (L.R. 56.1(a)(2)), and each asserted fact "must be supported by citation to the specific evidentiary material ... that supports it." L.R. 56.1(d)(2). The rule also provides that the district court may "disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2). The non-movant then is required to file a response to the movant's statement of material facts and "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." L.R. 56.1(e)(2).

To properly dispute an asserted fact, a party "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3); *see also*

*Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (recognizing that the district court may deem facts admitted for purposes of summary judgment when a party does not comply with L.R. 56.1). The non-movant also may submit a statement of additional material facts to which the movant must reply. *See* L.R. 56.1(b)(3),(c)(2). The requirement that asserted facts and responses thereto must be supported with specific citations to evidentiary material also applies to the non-movant's statement of additional facts and any reply by the movant. *See* L.R. 56.1(e)(2),(3).

Finally, it is well-settled that the district court has broad discretion to "require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000). When a party fails to follow the rules, the court is not required to "scour the record looking for factual disputes." *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 769 (7th Cir. 2015). In addition, Local Rule 56.1 requires that statements of fact must contain allegations of material fact, and those factual statements must be supported by admissible record evidence. *See Malec v. Sanford,* 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). *Howard v. Inland SBA Mgmt. Corp.*, 32 F. Supp. 3d 941, 949 (N.D. Ill. 2014). Thus, any factual statement or response that is not based on personal knowledge, is irrelevant, evasive, conclusory or speculative, or contains hearsay, argument, or legal conclusions will not be considered by the district court when ruling on a summary judgment motion, and any fact that is not supported by record evidence also must be

6

disregarded by the district court. *See Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F. Supp. 2d 503, 507-09 (N.D. Ill. 2011).

Some of Garfield Plaintiffs' responses to GNY Mutual's statements of fact do not comply with Local Rule 56.1(b)(3) because, when disputing certain of GNY Mutual's factual assertions, Plaintiffs do not cite specific admissible evidence but instead cite to various paragraphs in their statement of material facts in support of their own Motion for Partial Summary Judgment or their statement of additional facts in opposition to GNY Mutual's Motion for Summary Judgment. *See Musa-Muaremi v. Florists' Transworld Delivery Inc.*, 2011 WL 13327295, at *4 (N.D. Ill. Oct. 5, 2011) (holding that a party's denial of statement of fact that cites to its own statement of facts rather than to a specific part of the record is improper).

Although these cross-references do not comply with Local Rule 56.1(b)(3), the Court concludes, based on the posture of this case and how the parties have presented their motions, that non-compliance does not warrant striking Garfield Plaintiffs' responses at the outset in this particular case because the cross-referenced statements of fact themselves contain citations to the factual record. If the Court can discern the basis for Garfield Plaintiffs' denials by drilling down to the underling evidence cited in support of their cross-referenced statements of fact, the Court will treat the factual statement as properly disputed. If, however, the underlying evidence cited in the cross-referenced statement of fact does not support Plaintiffs' denial of

7

GNY Mutual's asserted fact, then the Court will deem GNY Mutual's fact admitted because the denial is not supported by the underlying record evidence.[4]

## STATEMENT OF FACTS

The facts are taken from the parties' Local Rule 56.1 statements of facts and responses thereto.[5] Garfield Plaintiffs and GNY Mutual generally agree on the sequence of events giving rise to the present action, and the following facts set forth in the Statement of Facts are undisputed except when noted. If a fact is disputed in this Statement of Facts section, the Court will identify the dispute and each side's position and will explain how the fact will be treated for purposes of these motions. All other disputed facts will be addressed in the context of the parties' arguments in the Analysis section of this Memorandum Opinion and Order.

The Building owned by Garfield Plaintiffs is a commercial property located at 460-480 Garfield Avenue in Aurora, Illinois. GNY's SOF [156], at ¶2; Pls' Answer to GNY's SOF [175], at ¶2. Garfield Plaintiffs purchased a Property and Inland Marine

---

[4] A failure to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 has straightforward consequences. A court may accept as true any properly supported fact in the movant's statement of facts if the non-movant fails to come forward with contrary evidence. *See* FED. R. CIV. P. 56(e)(2) ("If a party...fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion."); Local Rule 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

[5] The documents cited include: GNY Mutual's Statement of Material Facts ("GNY's SOF") [156]; Plaintiffs' Answer to GNY Mutual's Statement of Material Facts and Additional Statement of Material Facts ("Pls' Answer to GNY's SOF") [175]; Defendant's Responses and Objections to Plaintiffs' Additional Statement of Material Facts ("GNY's Resp. to Pls' Add'l SOF") [180]; Plaintiffs' Local Rule 56.1 Statement of Material Facts ("Pls' SOF") [155]; Defendant's Responses and Objections to Plaintiffs' Statement of Material Facts and Additional Material Facts ("GNY's Resp. to Pls' SOF and GNY's Add'l SOF") [178]; and Plaintiffs' Response to GNY's Additional Statement of Material Facts ("Pls' Resp. to GNY's Add'l SOF") [186].

Insurance Policy from GNY Mutual to insure the Building, and the Policy was in effect from December 21, 2018 to December 21, 2019. GNY's SOF [156], at ¶¶2-3; Pls' Answer to GNY's SOF [175], at ¶¶2-3. Subject to the agreed-upon terms, conditions, and exclusions set forth in the Policy, the Policy provides insurance coverage for "direct physical loss of or damage to [the Building] … caused by or resulting from a Covered Cause of Loss … unless the loss is excluded or limited." GNY's SOF [156], at ¶4; Pls' Answer to GNY's SOF [175], at ¶4. The Policy also provides that GNY Mutual only will cover loss or damage commencing during the Policy period. GNY's SOF [156], at ¶4; Pls' Answer to GNY's SOF [175], at ¶4. "Covered Causes of Loss" means risks of direct physical loss unless the loss is excluded or limited. GNY's SOF [156], at ¶5; Pls' Answer to GNY's SOF ¶5.

Garfield Plaintiffs allege they are entitled to insurance coverage under the Policy because the Building sustained a power outage during a storm event on or about June 28, 2019, which falls within the Policy period, and the Building was damaged as a result of the June 28, 2019 storm, which Plaintiffs contend is a Covered Cause of Loss. GNY's SOF [156], at ¶11; Pls' Answer to GNY's SOF [175], at ¶11. Garfield Plaintiffs also claim they "sustained a fire casualty loss" that rendered the entire Building uninhabitable and ultimately lead to the City of Aurora issuing an order to vacate the Building and initiating demolition proceedings. GNY's SOF [156], at ¶12; Pls' Answer to GNY's SOF [175], at ¶12.

Garfield Plaintiffs seek to recover (1) $627,296 for the "immediate damage" identified in the December 2019 proof of loss they submitted to GNY Mutual, (2)

9

$14,500,000 for the total loss of the Building because it became uninhabitable, and (3) loss of business income and other expenses relating to the loss. GNY's SOF [156], at ¶13; Pls' Answer to GNY's SOF [175], at ¶13. Garfield Plaintiffs also seek up to $60,000, which is the statutory limit allowed for their claim of bad faith against GNY Mutual. GNY's SOF [156], at ¶13; Pls' Answer to GNY's SOF [175], at ¶13.

Prior to the alleged loss event on June 28, 2019, Louis M. Giordano ("Giordano") and Ron Basara ("Basara") were the two main individuals who provided services in connection with the mechanical, electrical, and plumbing equipment at the Building. GNY's SOF [156], at ¶14; Pls' Answer to GNY's SOF [175], at ¶14. On December 16, 2019, Garfield Plaintiffs submitted to GNY Mutual a signed and sworn statement that was executed by Basara with its proof of loss, seeking $627,296.78 for damages to the Building, including mitigation expenses, lost profits, extra expenses, and code upgrades, which Garfield Plaintiffs represented under oath were caused by a loss of power and power surge that occurred around 10 a.m. on June 28, 2019, and that a storm caused the loss. GNY's SOF [156], at ¶17; Pls' Answer to GNY's SOF [175], at ¶17.

Garfield Plaintiffs reported the alleged damage to GNY Mutual almost six weeks later on August 8, 2019. GNY's SOF [156], at ¶26; Pls' Answer to GNY's SOF [175], at ¶26. In notice of loss form submitted to GNY Mutual, Garfield Plaintiffs specifically stated:

> On June 28th [2019] at about 10AM there was a power outage. Around noon they restored the power, the power did not restore properly. The [B]uilding is served by three phase power, one leg of power was still out in the evening and ComEd came to restore the power fully. When they

10

energized the building, the breaker box in the basement began to smoke. The fire department ordered the power turned off, which triggered an evacuation of the building. From June 28th until July 2nd the building was closed.

GNY's SOF [156], at ¶26; Pls' Answer to GNY's SOF [175], at ¶26.

After receiving notice of the loss, GNY Mutual retained an independent adjuster, Richard Grganto of Crawford & Company ("Crawford"), to investigate Garfield Plaintiffs' insurance claim and to inspect and analyze the alleged damage to the Building. GNY's SOF [156], at ¶27; Pls' Answer to GNY's SOF [175], at ¶27. On or about August 16, 2019, GNY Mutual sent a reservation of rights letter to Garfield Plaintiffs informing them that GNY Mutual was investigating their insurance claim under a full reservation of rights because, among other things, the claim was reported six weeks after the alleged date of loss on June 28, 2019, and GNY Mutual directed Plaintiffs' attention to their "duties in the event of a loss" as defined under the Policy's terms and conditions. GNY's SOF [156], at ¶28; Pls' Answer to GNY's SOF [175], at ¶28.

Four months later, GNY Mutual issued a second reservation of rights letter dated December 13, 2019 that provided, among other things, an update on Garfield Plaintiffs' claim based on the initial findings from GNY Mutual's consultants. GNY's SOF [156], at ¶32; Pls' Answer to GNY's SOF [175], at ¶32. The December 13, 2019 letter notified Garfield Plaintiffs that their claim still was being investigated and that coverage could be limited or precluded based on certain provisions in the Policy and GNY Mutual's review of the available materials at that time. GNY's SOF [156], at ¶32; Pls' Answer to GNY's SOF [175], at ¶32. GNY Mutual also requested Garfield

11

Plaintiffs provide "a signed, sworn proof of loss advising [GNY] of your entire claim" under the Policy. GNY's SOF [156], at ¶32; Pls' Answer to GNY's SOF [175], at ¶32.

After receiving the proof of loss and some supporting documents from Garfield Plaintiffs, GNY Mutual sent another letter on or about January 10, 2020, which informed Plaintiffs that they had not provided certain information in support of the claimed amounts identified on the proof of loss form and also notified Plaintiffs that after receiving the missing information, GNY Mutual would need to take Examinations Under Oath of Basara, Giordano, and John E. Thomas pursuant to the terms and conditions of the Policy. GNY's SOF [156], at ¶33; Pls' Answer to GNY's SOF [175], at ¶33.

On or about January 15, 2020, GNY Mutual sent another letter to Garfield Plaintiffs seeking additional information and documentation about the amounts claimed on the proof of loss, including estimates, proposals, invoices, payment receipts, and quotes. GNY's SOF [156], at ¶; Pls' Answer to GNY's SOF [175], at ¶34. In that letter, GNY Mutual informed Garfield Plaintiffs again that additional information was needed before any coverage determination could be made on their claim. GNY's SOF [156], at ¶34; Pls' Answer to GNY's SOF [175], at ¶34. GNY Mutual also notified Garfield Plaintiffs that it would not accept or reject their proof of loss until it had completed its investigation. GNY's SOF [156], at ¶34; Pls' Answer to GNY's SOF [175], at ¶34. In addition to requesting additional information, GNY Mutual's January 15, 2020 letter also informed Garfield Plaintiffs that GNY was denying coverage in-part for some fines and penalties Plaintiffs had claimed were

12

imposed by the City of Aurora due to code violations observed at the Building. GNY's SOF [156], at ¶34; Pls' Answer to GNY's SOF [175], at ¶34.

GNY Mutual sent additional correspondence to Garfield Plaintiffs in March and April 2020, reiterating that the Examinations Under Oath could be scheduled as soon as GNY Mutual received the requested missing documentation from Plaintiffs. GNY's SOF [156], at ¶36; Pls' Answer to GNY's SOF [175], at ¶36. On September 16, 2020, Garfield Plaintiffs informed GNY Mutual that "the City of Aurora filed an order to demolish 460 and 480 Garfield Avenue on conditions related to a fire loss and subsequent order vacating and shuttering of the building." GNY's SOF [156], at ¶38; Pls' Answer to GNY's SOF [175], at ¶38. On October 16, 2020, Garfield Plaintiffs sent an email informing GNY Mutual about developments in the foreclosure and demolition actions filed against Plaintiffs and notifying GNY Mutual about alleged fire loss and/or vandalism damage at the Building that they would be submitting and claiming in amended documents. GNY's SOF [156], at ¶39; Pls' Answer to GNY's SOF [175], at ¶39.

GNY Mutual responded that same day and informed Garfield Plaintiffs that if they intended to claim additional damage that required the demolition of the Building, Plaintiffs were obligated to (1) support their claims and the alleged damages and (2) seek a stay of the demolition until GNY Mutual could review the support for their claims and alleged damages and have an opportunity to further inspect the Building; and that failure to do so may result in a forfeiture of coverage. GNY's SOF [156], at ¶39; Pls' Answer to GNY's SOF [175], at ¶39. GNY Mutual says

13

that between December 2020 and June 21, 2021, Garfield Plaintiffs did not provide any of the missing documentation that it previously had been requested from Plaintiffs. GNY's SOF [156], at ¶42; Pls' Answer to GNY's SOF [175], at ¶42.[6]

On June 21, 2021, Garfield Plaintiffs' counsel issued a demand letter to GNY Mutual's counsel, seeking damages up to $14,500,000 for the full value of the Building. GNY's SOF [156], at ¶43; Pls' Answer to GNY's SOF [175], at ¶43. Two months later on August 3, 2021, GNY Mutual issued a letter informing Garfield Plaintiffs that it was denying coverage for all claims under the Policy. GNY's SOF [156], at ¶44; Pls' Answer to GNY's SOF [175], at ¶44. On October 20, 2021, prior to sitting for any Examinations under Oath, Garfield Plaintiffs filed this lawsuit against GNY Mutual asserting three causes of action: (1) declaratory judgment that they are entitled to insurance coverage under the Policy; (2) breach of contract; and (3) bad faith pursuant to Section 155 of the Illinois Insurance Code. GNY's SOF [156], at ¶45; Pls' Answer to GNY's SOF [175], at ¶45.

## ANALYSIS

GNY Mutual asserts five arguments in support of its Motion for Summary Judgment [152]: (1) Garfield Plaintiffs cannot establish a prima facie case that the alleged damages to the Building and losses incurred resulted from a fortuitous loss

---

[6] Garfield Plaintiffs deny this fact but do not cite to any specific evidence in the record and instead reference their Statements of Facts ¶¶7-9 [155] in support of their Motion for Partial Summary Judgment [153]. Although this is not a proper response to GNY Mutual's statement of fact as discussed above, the Court will not strike Garfield Plaintiffs' response for a failure to comply with Local Rule 56.1(e)(2)-(3). The Court, however, has reviewed Garfield Plaintiffs' Statements of Facts ¶¶7-9 and the underlying evidence cited, and the Court concludes the underlying record evidence that Garfield Plaintiffs cite does not support their denial of Statement of Fact ¶42. Therefore, GNY Mutual's Statement of Fact ¶42 is deemed admitted.

14

and are covered losses under the Policy; (2) even if Garfield Plaintiffs could establish a prima facie case, the alleged losses are excluded under express terms of the Policy relating to water damage, deferred maintenance, and false misrepresentations; (3) Garfield Plaintiffs breached the "Loss Conditions" provisions of the Policy by filing this lawsuit before sitting for the Examinations under Oath requested by GNY Mutual; (4) Garfield Plaintiffs breached the "Concealment, Misrepresentation or Fraud" provisions in the Policy by (a) falsely stating under oath that they had obtained a written $13,765 quote for repairs to the sump pump system caused by a June 28, 2019 power outage when the evidence shows the quote originally was sent to Garfield Plaintiffs before June 28, 2019 and Plaintiffs asked the pump manufacturer to re-date the quote to July 23, 2019 to cover their tracks; (b) concealing dewatering operations that occurred at the Building in early-June 2019 prior to the alleged date of loss when at least three temporary pumps were installed to try keep up with the rising water levels; (c) falsely representing that all of the temporary pumps were installed *after* June 28, 2019; and (d) falsely stating under oath that they paid $29,313 in emergency water mitigation costs after the June 28, 2019 incident; and (5) Garfield Plaintiffs' claims for vandalism, demolition, and total loss of the Building were late and are time-barred. *See generally* GNY's Am. Memo. of Law [158], at 8-30.

In support of their Motion for Partial Summary Judgment [153], Garfield Plaintiffs argue: (1) they are entitled to insurance coverage under the Policy because they have met their burden by establishing a storm occurred on June 28, 2019 and

15

caused a sudden and accidental electrical surge on that date which caused physical damage to the Building during the Policy period; (2) GNY Mutual breached its contractual obligations under the Policy by failing to conduct a reasonable investigation and issue a timely coverage determination on their claim; and (3) GNY Mutual's conduct was vexatious and unreasonable and warrants statutory relief under Section 155 of the Illinois Insurance Code. *See generally* Pls' Memo. of Law [154], at 3-12.

The threshold issue in this case is whether Garfield Plaintiffs have met their initial burden to establish a prima facie case that they have a viable claim for insurance coverage under the Policy at issue. It is not disputed by either party that the Policy at issue is an "at-risk" or "all risk" insurance policy that covers fortuitous losses except those specifically excluded under the Policy.[7] Garfield Plaintiffs contend that a fortuitous event occurred on June 28, 2019, which Plaintiffs characterize as a storm that caused a sudden and accidental loss of power, electrical surge and switchgear failure that damaged the Building's life-safety systems, triggered an evacuation, and resulted in the alleged damages and losses for which Garfield Plaintiffs filed their claim for insurance under the Policy. GNY Mutual contends,

---

[7] The Policy provides commercial property insurance coverage subject to all relevant terms, conditions, and exclusions. GNY's SOF ¶5; Pls' Answer to GNY's SOF ¶5. Specifically, the Policy provides coverage for "direct physical loss of or damage to Covered Property [here, the Building at 460-480 Garfield] … caused by or resulting from a Covered Cause of Loss." GNY's SOF ¶5; Pls' Answer to GNY's SOF ¶5. "Covered Causes of Loss" means risks of direct physical loss unless the loss is excluded or limited. GNY's SOF ¶5; Pls' Answer to GNY's SOF ¶5. The Policy also provides that GNY will only cover loss or damage commencing during the policy period, in this case from December 21, 2018 to December 21, 2019. GNY's SOF ¶5; Pls' Answer to GNY's SOF ¶5.

16

among other arguments, that Garfield Plaintiffs have not met their threshold burden as a matter of law. This is where the Court begins its analysis.

## I. Garfield Plaintiffs Do Not Establish A Prima Facie Case for Insurance Coverage

In a motion for summary judgment involving an insured's claim for coverage and damages under an all-risk insurance policy, the insured bears the initial burden of presenting sufficient facts establishing a prima facie case. *See Terraces Condo. Ass'n v. Ins. Co. of Greater New York*, No., 2022 WL 847478, at *3 (N.D. Ill. Mar. 22, 2022); *Gulino v. Econ. Fire & Cas. Co.*, 2012 Ill. App. (1st) 102429; 971 N.E.2d 522, 527 (Ill. App. 2012); *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App.3d 864, 871 (2003) (citing *Wallis v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 566, 570 (2000)). To satisfy this burden, Garfield Plaintiffs, as the insureds, must show that (1) a loss occurred, (2) the loss resulted from a fortuitous event, and (3) an all-risk policy covering the property was in effect at the time of the loss. *See Terraces Condo. Ass'n*, 2022 WL 847478, at *3; *Johnson Press*, 339 Ill.App.3d at 871. Once the insured establishes a prima facie case, the burden then shifts to the insurer, here GNY Mutual, to affirmatively demonstrate that the alleged loss is not covered by the policy at issue or resulted from a peril that is expressly excluded from coverage under the policy. *See Terraces Condo. Ass'n*, 2022 WL 847478, at *3; *Johnson Press*, 339 Ill.App.3d at 871. Provisions in an insurance policy that exclude or limit coverage must be construed liberally against the insurer. *See United National Insurance Co. v. Faure Brothers Corp.*, 409 Ill.App.3d 711, 717 (2011).

Here, it is not disputed that GNY Mutual's Policy was in effect on June 28, 2019. The critical question is whether Garfield Plaintiffs have made a prima facie showing, based on the undisputed material facts, that a fortuitous event on June 28, 2019 caused the loss and alleged damages in question that would trigger insurance coverage under the Policy. One Illinois Appellate Court defined "fortuitous" as meaning "happening by chance or accident, or occurring unexpectedly or without known cause." *Cincinnati Insurance Co. v. American Hardware Manufacturers Ass'n*, 387 Ill. App. 3d 85, 108-09, 298 N.E.2d 216 (2008) (citing *Johnson Press*, 339 Ill. App. 3d at 887). "The determination of whether a loss is fortuitous is a legal question for the court to determine." *Cincinnati Insurance*, 387 Ill. App. 3d at 109 (quoting *Johnson Press*, 339 Ill. App. 3d at 872). In *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co,* 915 F.2d 316 (7th Cir. 1990), the Seventh Circuit recognized that to recover under an all-risk insurance policy, the insured must demonstrate that a loss occurred and that the loss was caused by a fortuitous event. 915 F.2d at 318. The Seventh Circuit held that "it is not enough to show that a loss *may* have occurred. [Insureds] must prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under the policy." *Id.*

Garfield Plaintiffs contend that the fortuitous event in this case is a storm that occurred on June 28, 2019, which allegedly caused a sudden and accidental electrical surge that resulted in physical damage to the Building and other losses. Pls' Memo. of Law [154], at 4. In response, GNY Mutual argues that Garfield Plaintiffs have

18

failed to satisfy their prima facie burden to show the claimed losses were caused by a fortuitous event on June 28, 2019 because Plaintiffs do not cite to any admissible evidence that a storm on June 28, 2019 caused damage to the Building. GNY's Am. Memo. of Law [158], at 21. GNY Mutual asserts that Garfield Plaintiffs' purported evidence comes from two witnesses who do not have any direct, personal knowledge that there actually was a storm at the Building on June 28, 2019 and that the alleged storm caused the damages and loss for which Plaintiffs seek insurance coverage. GNY's Am. Memo. of Law [158], at 21 (citing GNY's SOF [156], at ¶¶ 16, 24, 75).

Garfield Plaintiffs disagree and assert that the undisputed facts show that "qualified individuals with direct knowledge of the conditions … uniformly attributed the damage to power surge caused by a severe storm…." Pls' Opposition Brief [174], at 4-5 (citing Pls' SOF [155], at ¶¶6-8, 10); Pls' Memo. of Law [154], at 6 (also citing Pls' SOF [155], at ¶¶6-8, 10).[8] GNY Mutual has moved to strike certain evidence cited by Plaintiffs in support of their argument that the Building was damaged on June 28, 2019 as inadmissible hearsay. GNY's Opposition Brief [177], at 29-30; GNY's Resp. to Pls' SOF [178], at ¶¶6-8, 10.

When ruling on a motion for summary judgment, a district court may only consider admissible evidence. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."). It is the function

---

[8] The Court notes here that when responding to GNY Mutual's Motion [152], Garfield Plaintiffs specifically "incorporate their previously filed Rule 56.1 statement of facts and arguments made in its own motion in response to GNY's Motion." Pls' Opposition Brief [174], at 2. The arguments and facts asserted the parties' Motions [152, 153] overlap.

of the district court, with or without a motion to strike, to carefully review the parties' statements of material facts and to eliminate from consideration any arguments, conclusions, or alleged facts that are not supported by the record evidence. *See Bobak Sausage Co.*, 805 F. Supp. 2d at 507-09; *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.,* 2006 WL 980740, at *2 n. 2 (N.D. Ill. April 10, 2006).

The Federal Rules of Evidence prohibit the admission of hearsay. *See* FED. R. EVID. 802. Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" that is "offer[ed] in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). "[H]earsay offered at summary judgment is every bit as inadmissible as hearsay offered at trial (unless, of course, it falls within an exception)." *Barnes v. Wexford Health Sources*, 2024 WL 3165793, at *7 (N.D. Ill. May 24, 2024). The Court, therefore, must consider the statements of fact asserted by the parties as movants and their responses as non-movants and carefully review the underlying evidence on which they rely to support the asserted facts and the responses to determine, among other things, if any testimony offered is inadmissible hearsay and if it falls within any exclusion. *See Carlise v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009). And if any evidence is found to be inadmissible hearsay, then the Court will not consider it. *Id.*

Garfield Plaintiffs primarily rely on and cite to testimony from two witnesses— Louis Giordano, the Building's property manager, and Ron Basara, the project manager—who are the individuals who were primarily responsible for providing services in connection with the mechanical, electrical, and plumbing equipment at

20

the Building. Pls' Memo. of Law [154], at 6. Garfield Plaintiffs assert that Giordano and Basara have direct, personal knowledge of the damages and losses that occurred at the Building on June 28, 2019, and that their testimony provides "consistent and credible support that the resulting damage was both sudden and accidental." Pls' Memo. of Law [154], at 7. GNY Mutual disputes Plaintiffs' assertions and argues that the evidence shows that neither Giordano nor Basara has personal knowledge about events that occurred at the Building on June 28. 2019. GNY's Am. Memo. of Law [158], at 21; GNY's Opposition Brief [177], at 7-10. Having carefully reviewed the record evidence cited by both sides, the Court agrees with GNY Mutual.

## A. Giordano Does Not Have Personal Knowledge about What Happened at the Building on June 28, 2019 and His Testimony is Inadmissible Hearsay

Addressing Giordano's testimony first, in response to one of GNY Mutual's statements of material fact, Garfield Plaintiffs admit that Giordano was not at the Building at any point in time when a storm allegedly occurred on June 28, 2019 and caused damage to the Building. Pls' Resp. to GNY's Add'l SOF [186], at ¶32.[9] Plaintiffs also admit that Giordano did not observe any storm damage to the pole mounted transformers or to any of the electrical equipment providing power to the building. Pls' Resp. to GNY's Add'l SOF [186], at ¶33.[10] Notwithstanding these

---

[9] Garfield Plaintiffs admit: "Giordano was not at Plaintiffs' Building on June 28, 2019 when the alleged outage/surge and electrical failures occurred." *See* Pls' Ex. 2 [155-3], Giordano Dep. at 69:21-24.

[10] Garfield Plaintiffs admit: "Giordano did not observe any storm damage to the pole mounted transformers or to any of the electrical equipment providing power to the building." *See* Pls' Ex. 2 [155-3], Giordano Dep. at 82:3-6.

21

admissions, Garfield Plaintiffs contemporaneously deny GNY Mutual's related statements of additional facts about Giordano's purported personal knowledge, as follows:

> **AMF 34:** It is not possible that Giordano has any personal knowledge about what ComEd did or did not do at the Building on June 28, 2019, or when or why ComEd did or did not do such work because he was never at the Building on June 28, 2019. Any information Giordano has in regards to ComEd's scope of work that was or was not performed on June 28, 2019 came from what others told him. Pl. Ex. 2, Giordano Dep. at 68:16-23; 69:1-24; 74:2-4; 81:8-82:2; 89:5-91:15; 121:2-123:6.
>
> **RESPONSE:** Deny. See Plaintiffs' Statement of Facts, ¶6.
>
> **AMF 35:** Giordano does not have any personal knowledge or information about any areawide [sic] outage that affected the Building on June 28, 2019. Pl. Ex. 2, Giordano Dep. 69:21-24; 81:8-82:2.
>
> **RESPONSE:** Deny. See Plaintiffs' Statement of Facts, ¶6.
>
> **AMF 36:** Giordano does not have any personal knowledge or information about the details of the purported power surge event that allegedly occurred at the Building on June 28 , 2019. Pl. Ex. 2, Giordano Dep. 69:21-24; 77:4-22; 121:2-123:6.
>
> **RESPONSE:** Deny. See Plaintiffs' Statement of Facts, ¶6.

Pls' Resp. to GNY's Add'l Facts [186], at ¶¶34, 35, 36 (citing Pls' SOF [155], at ¶6).

If Garfield Plaintiffs' denials were properly supported by the record evidence, the Court might be required to deny summary judgment. But they are not supported by the record. Garfield Plaintiffs do not directly cite to any record evidence in support of their denials. Instead, they cite their own Statement of Fact ¶6, which includes citations to the record. *Id.* As discussed above, these denials are not proper. *See Musa-Muaremi*, 2011 WL 13327295, at *4 (holding that a party's denial of statement of fact that cites to its own statement of facts rather than to a specific part of the record is

22

improper). The Court, however, reviewed the underlying evidence referenced in Garfield Plaintiffs' Statement of Fact ¶6, which is the transcript of Giordano's deposition. After reviewing Giordano's actual deposition testimony, it is clear to the Court that, contrary to Garfield Plaintiffs' assertion, Giordano does not have any direct, personal knowledge about what happened at the Building on June 28, 2019. Rather, his purported "personal knowledge" is based on what he allegedly was told by other people, including the Building's resident property manager, undisclosed representatives of the City of Aurora, tenants of the Building, the Aurora Fire Department, and ComEd. GNY's Opposition Brief [177], at 7-8; s*ee also* Pls' Ex. 2 [155-3], Giordano Dep. at 68:16-23; 69:21-24; 74:2-4; 81:8-82:2; 82:3-6; 89:5-91:15; and 121:2-123:6. This is classic hearsay testimony that is inadmissible, and Garfield Plaintiffs have not argued that this testimony falls within any hearsay exception.

GNY Mutual has moved to strike Giordano's testimony as hearsay (as well as some of Basara's testimony as discussed below) by including that request for relief in their response to Garfield Plaintiffs' Motion [153]. GNY's Opposition Brief [177], at 29-30. The Court did not set a separate briefing schedule on that "motion" to strike. There was, however, a date already set for Garfield Plaintiffs to file their reply brief, which they filed. *See* Pls' Reply [182]. Plaintiffs' reply brief was only two-pages (three-pages with the signature block) and only glancingly acknowledged GNY Mutual's argument that the Court should strike Plaintiffs' hearsay testimony. Garfield Plaintiffs merely acknowledged that GNY Mutual wants "to  strike the sworn testimony of witnesses with personal knowledge," but they did not substantively

address or challenge GNY Mutual's argument that Giordano's testimony is inadmissible hearsay. *See* Pls' Reply [182], at 2, ¶6.

Nowhere in Garfield Plaintiffs' briefing of the cross-motions for summary judgment do they argue that the testimony of Giordano, one of their main witnesses, is not hearsay or, alternatively, that it is admissible under an exception to the hearsay rule. *See Hartford Fire Ins. Co. v. Taylor*, 903 F.Supp.2d 623, 640 (N.D. Ill. Octo. 17, 2012 (recognizing that the proponent of hearsay bears the burden of establishing that the statement is admissible). Failure to respond to an argument— as Garfield Plaintiffs have done here—can result in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718-19 (7th Cir. 2012) (recognizing that arguments may be waived if they are "underdeveloped, conclusory, or unsupported by law"). Because Giordano does not have any personal knowledge based on his own observations about what occurred at the Building on June 28, 2019, the Court finds that his testimony about a storm that allegedly occurred on June 28, 2019 that caused damage to the Building on that date is inadmissible hearsay. Garfield Plaintiffs, therefore, cannot rely on his testimony to dispute GNY Mutual's additional statements of facts cited above. *See supra* at 22 (quoting Pls' Resp. to GNY's Add'l Facts [186], at ¶¶34, 35, 36 (citing Pls' SOF [155], at ¶6)).

Garfield Plaintiffs do not cite to any other evidence in support of their Statement of Fact ¶6. Plaintiffs, therefore, are left with bald denials of GNY Mutual's additional facts. The law is clear that a party cannot respond to a statement of fact

24

or an additional statement of fact simply by denying that fact, without saying more. *See Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 885 (N.D. Ill. 2005) ("To the extent that defendant's denials are not supported by citations to evidence in the record, the court agrees with plaintiff that those denials do not create a dispute of material fact."). A party must come forward with concrete evidence, not an expression of disagreement only. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("In addition, where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial.").

Accordingly, GNY Mutual's Statements of Additional Material Facts ¶¶ 34, 35, and 36 (that are quoted above regarding Giordano's lack of personal knowledge) are deemed admitted.[11] The Court, therefore, concludes that Garfield Plaintiffs' denials of these additional facts do not create any disputed issues of fact that would prevent this Court from granting summary judgment to GNY Mutual.

### B. Barasa Does Not Have Personal Knowledge about What Happened at the Building on June 28, 2019

Garfield Plaintiffs' reliance on Barasa's testimony is similarly unavailing. Garfield Plaintiffs assert in their Statement of Fact ¶7 that Basara was at the Building on June 29, 2019, the date after the alleged storm, and found that a "bad

---

[11] *See Cracco*, 559 F.3d at 632 (holding that failure to properly controvert a fact supported by admissible evidence results in its admission); *Bergholz v. John Marshall Law School*, 448 F. Supp. 3d 887, 893 (N.D. Ill. 2020) (holding that the plaintiff "fail[ed] to cite any record evidence indicating he has such personal knowledge so the fact is deemed admitted").

storm" caused a power outage, and "when power was restored, it was done improperly, causing critical system failures to pumps and elevators." Pls' SOF [155], at ¶7. The Court, however, reviewed the underlying evidence referenced in Garfield Plaintiffs' Statement of Fact ¶7, which is the transcript of Basara's deposition.

After reviewing Basara's actual deposition testimony, it is clear to the Court that, contrary to Garfield Plaintiffs' assertion, Basara also does not have any direct, personal knowledge about what happened at the Building on June 28, 2019 or June 29, 2019. Like Giordano, the underlying record evidence confirms that Basara undisputedly was not at the Building on June 28, 2019 or June 29, 2019. GNY's Opposition Brief [177], at 8-9; Pls' Resp. to GNY's Add'l Facts [186], at ¶29 (citing Pls' Ex. 3 [155-4], Basara Dep. at 42:10-45; 45:22-24) (admitting that Basara was not at the Building on or around June 29, 2019).

Notwithstanding this testimony, Garfield Plaintiffs deny GNY Mutual's Statements of Additional Fact ¶¶30 and 31 as follows:

> **AMF 30:** Basara has no personal knowledge about any area-wide power outages in the City of Aurora in June or July 2019.
> Pl. Ex. 3, Basara Dep. 58:12-15, testifying that he is unaware of any area-wide power outages in the City of Aurora in June or July 2019.

> **RESPONSE:** Deny. See Plaintiffs' Statement of Facts, ¶ 7-8.

> **AMF 31:** Basara has no personal knowledge about when or how power restored after the June 28, 2019 incident.
> Pl. Ex. 3, Basara Dep. 46:11-47:17; & 58:9-11, testifying that he does not know when or how power was restored at Plaintiffs' Building following the June 28, 2019 outage. Pl. Ex. 3, Basara Dep. 50:24-51 :24. Basara testifying that he does not have any personal knowledge about when ComEd was at Plaintiffs' Building in June, July, and August 2019, and also explaining that the information that he has about ComEd's involvement (including when and what ComEd did or did not do at the Building) came from Lou Giordano.

26

**RESPONSE:** Deny. See Plaintiffs' Statement of Facts, ¶ 7-8 Pls' Resp. to GNY's Add'l SOF [186], at ¶¶30, 31. Contrary to Garfield Plaintiffs' denials, however, Basara admitted he was not at the Building on June 29, 2019 and, in fact, testified that he was not there until four or five weeks later. GNY's Opposition Brief [177], at 8-9 (citing Pls' Ex. 3 [155-4], Basara Dep. at 58:12-15).[12] Basara also testified that he did know when ComEd reenergized the Building. GNY's Opposition Brief [177], at 8-9 (citing Pls' Ex. 3 [155-4], Basara Dep. at 58:9-11). Basara specifically testified: "I am not aware of what ComEd did or didn't do." GNY's Opposition Brief [177], at 8-9 (citing Pls' Ex. 3 [155-4], Basara Dep. at 57:24-58:1).

Based on his deposition testimony, the Court finds on this record that Basara simply has no personal knowledge about (1) whether or not a storm occurred on June 28, 2019 and caused the alleged damage for which Plaintiffs are seeking insurance coverage, (2) the cause of any power outage or surge at the Building, or (3) any other conditions that were present at the Building in late-June 2019, and his testimony

---

[12] The Court notes here that GNY Mutual also, at times, does not comply with Local Rule 56.1 when it cites directly to evidence in the record and not to a corresponding statement of fact that Garfield Plaintiffs could admit or deny. Adherence to Local Rule 56.1 gives the opposing party the opportunity to either admit or deny a statement of fact and to provide record support for either assertion. By not following the rule, a party injects facts into the record that have not been subject to the opposing side's scrutiny, nor presented to the court in a proper way for its review. *See Bobak Sausage Co.*, 805 F. Supp. 2d at 507-09. Although the Seventh Circuit repeatedly has held that a district court is within its discretion to strictly enforce compliance with its local rules regarding summary judgment motions, the Court declines do so here consistent with its decision to not strictly enforce Local Rule 56.1 when Garfield Plaintiffs failed to comply. Instead, the Court again has chosen to look at the underlying evidence in the record. Based on the Court's review of the deposition transcript, it is absolutely clear from Basara's testimony that he was not present at the Building on June 28, 2019 or June 29, 2019, and Garfield Plaintiffs' attempt argue that he has personal knowledge about what occurred at the Building on June 28, 2019 is not supported by the evidence.

does not support Garfield Plaintiffs' assertions in their Statement of Fact ¶7 that a storm occurred on June 28, 2019 and caused an outage that led to the "critical system failures." Pls' SOF [155], at ¶7. And notably, Garfield Plaintiffs again do not cite any additional evidence in support of their Statement of Fact ¶7. Accordingly, the Court similarly deems GNY Mutual's Additional Statement of Fact ¶30 admitted for purposes of these cross-motions for summary judgment because Garfield Plaintiffs' denial is not supported by the underlying evidence to which they cite and, therefore, does not create a disputed issue of fact that would require this Court to deny summary judgment.

### C. There Is No Admissible Evidence in the Record that the Parties Reached a Mutual Agreement that a Storm Caused Damage to the Building on June 28, 2019

Garfield Plaintiffs also argue that GNY Mutual never challenged their claim that a storm occurred on June 28, 2019 and caused a covered loss so it cannot do so now. Plaintiffs cite to Basara's testimony that there was a "mutual agreement" between Basara and Richard Grganto, the independent field adjustor from Crawford who GNY Mutual hired to investigate the property insurance claim submitted by Plaintiffs, that a storm on June 28, 2019 was "the cause of the loss" based on their collective review of the electrical gear, alarm panel, and transformer. *See* Pls' SOF [155], at ¶8 (citing Pls' Ex. 3 [155-4] Basara Dep., at 130:3-17); *see also* Pls' Opposition Brief [174], at 2-3.

GNY Mutual argues that Basara's testimony about a "mutual agreement" that a storm damaged the Building is inadmissible hearsay. As discussed above, Garfield Plaintiffs did not engage substantively with GNY Mutual's hearsay arguments in

28

their summary judgment briefing, and the Court agrees with GNY Mutual that Basara's testimony is inadmissible hearsay offered for the truth of the matter asserted. The Court recognizes that Basara's testimony could be admissible if Garfield Plaintiffs could show that Grganto was GNY Mutual's agent, and then Grganto's statements to Basara would be admissible as a party admission pursuant to Federal Rule of Evidence 801(d)(2)(D). Nowhere in the summary judgment briefing, however, do Garfield Plaintiffs argue or attempt to show that Granto was GNY Mutual's agent. And as discussed *infra*, they cannot do so.[13]

Because Garfield Plaintiffs did not address GNY Mutual's hearsay arguments in their briefing, the Court scheduled an in-court hearing for March 20, 2026, well-after the summary judgment briefing was closed, and specifically asked Plaintiffs to address "what admissible evidence [they] rely upon in their briefing of the pending motion for summary judgment, other than the testimony of Louis Giordano and Ron Basara, to establish that a fortuitous event occurred on June 2019." *See* 3/12/2026

---

[13] *See also Puffer*, 675 F.3d at 718 (holding that a party waives an argument if it is "underdeveloped, conclusory, or unsupported by law"); *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver."); *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) (holding that "it is not our job to do the legal research that [counsel] has omitted"); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made it clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived....").

Order [188]. In the next section of this Memorandum Opinion and Order, the Court addresses the arguments Garfield Plaintiffs raised at that hearing.[14]

### D. Garfield Plaintiffs' Arguments at the March 20, 2026 Hearing Are Not Persuasive

At the March 20, 2026 hearing, Garfield Plaintiff asserted three arguments: (1) Ron Barasa's testimony about his alleged "mutual agreement" with Grganto of Crawford falls under an exclusion to the hearsay rule and constitutes a party admission pursuant to Federal Rule of Evidence 801(d)(2)(D) because Grganto was GNY Mutual's agent; (2) Steven Baroncini, who is a vice president of property claims at GNY Mutual, acknowledged in his deposition testimony that GNY Mutual had a lightening report for June 28, 2019 and his testimony is additional evidence that a storm occurred on June 28, 2019; and (3) GNY Mutual did not challenge Plaintiffs' claim that a storm occurred on June 28, 2019 and caused damage to the Building nor did they assert in their August 3, 2021 Denial Letter that a storm did not occur on June 28, 2019 or that Plaintiffs' claim was not a covered loss.

#### 1. Plaintiffs' arguments asserted for the first time at the hearing are waived

As a threshold matter, Garfield Plaintiffs arguably waived all the arguments they made at the March 20, 2026 hearing by not raising or developing them in their summary judgment briefing. Plaintiffs' Opposition Brief [174] to GNY Mutual's Motion for Summary Judgment was six-pages including the signature and their

---

[14] The Court notes that, at the hearing, counsel for Garfield Plaintiffs did not mention the testimony of Louis Giordano nor did he address GNY Mutual's argument that Giordano's testimony is inadmissible hearsay. The Court, therefore, considers that issue resolved. Any argument that Giordano's testimony is not hearsay is waived

Reply Brief [182] in support of their own Motion for Partial Summary Judgment was just two-pages with only a signature appearing on the third page. Nowhere in their summary judgment briefing do Garfield Plaintiffs address the potential hearsay nature of the evidence they cite for the proposition that GNY Mutual agreed that a storm occurred on June 28, 2019 and caused a covered loss at the Building. They simply reference such an alleged agreement as an established fact without more. *See* Pls' Memo. of Law [154], at 6-7; Pls' Opposition Brief [174], at 2-3.

A failure to respond to an argument or raise an argument in a response or reply brief can result in waiver. *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) (holding that the plaintiff waived any counterarguments he may have had by not responding to the defendant's argument on this topic in his reply brief); *United States v. Farris,* 532 F.3d 615, 619 (7th Cir. 2008) (holding that a defendant's failure to respond to the government's argument in a reply brief resulted in the waiver of that argument); *Van Dyke v. U.S. Dep't of Justice, et al.*, 2026 WL 446575, at *1 (N.D. Ill. Jan. 14, 2026) ("[The plaintiff's] argument on this issue is underdeveloped and lacks citation to any supporting authority. The Court, therefore, will not consider it."); *Buggs v. McNulty*, 2025 WL 2207297, at *3 (N.D. Ind. July 31, 2025) ("A party waives an argument or abandons a claim when [he] fails to respond to an argument raised on summary judgment."); *Fair Hous. Ctr. of Cent. Ind., Inc. v. Rainbow Realty Grp., Inc.*, 2022 WL 6158365, at *1-2 (S.D. Ind. Oct. 7, 2022) ("The Court will not make arguments for the parties, nor should the parties expect that the Court will consider argument that the parties could have made, but did not."). In the Court's view,

Garfield Plaintiffs are not entitled to a second bite at the apple to make or develop arguments that were not raised or developed in their summary judgment briefing. Garfield Plaintiffs' arguments made at the hearing, therefore, have been waived. Even if the Court were to find that Garfield Plaintiffs' new arguments are properly raised and not waived, however, the Court is not persuaded by them, and it will address each one in turn.[15]

### 2. Barasa's testimony about Grganto's alleged statement or mutual agreement that a storm occurred on June 28, 2019 and caused damage to the Building is inadmissible hearsay

Garfield Plaintiffs' first argument asserted at the hearing is that Barasa's testimony about a "mutual agreement" between him and Grganto and a purported statement made by Grganto that a storm caused damage to the Building falls within an exclusion to the rule against hearsay embodied in Federal Rule of Evidence 801(d)(2)(D) and, therefore, it is not hearsay and is admissible testimony. Plaintiffs' counsel cites the following testimony from Basara's deposition as support:

> Q. Understood. So Mr. Basara, then you can testify that the insurance company, GNY's rep [Grganto] admitted to you that there was a covered loss. The amount of it could not be determined as of yet?
>
> A. That's correct.
>
> Q. That was an admission that they made?

---

[15] The Court notes that in its Order setting the March 20, 2016 hearing, it asked Garfield Plaintiffs to address what admissible evidence they rely upon *in their briefing of the pending motions for summary judgment* to establish a prima facie case. Instead, at the hearing, Plaintiffs raised new arguments that were not raised or fully developed in the summary judgment briefing. Despite that default, the Court has fully considered Garfield Plaintiffs' new arguments.

A. It's a statement that [Grganto] made to me that he agrees that the storm was the cause. The lightning hitting the transformer, knocking out the power. That's the cause of the loss.

*See* Pls' Ex. 4 [155-4], Basara's Dep. at 132: 3-12. Relying on this testimony, Garfield Plaintiffs now argue that Grganto's alleged statement to Basara is party admission pursuant to Federal Rule of Evidence 801(d)(2)(D) because Grganto is GNY Mutual's agent, which is another new argument asserted at the hearing for the first time.

Garfield Plaintiffs say that agency is established by testimony from Steven Baroncini, a GNY Mutual vice-president, that "Rick Graganto is the independent adjustor that we hired" and "is necessary to be our eyes and ears in the field." *See* Pls' Ex. 4 [155-5], Baroncini Dep. at 11:5-6; 16:11-12. Garfield Plaintiffs, however, did not include any facts whatsoever in their Local Rule 56.1 Statement of Material Facts [155] or in their Additional Statement of Material Facts [180] about any purported agency relationship between GNY Mutual and Grganto that would now support this new argument that Grganto was GNY Mutual's agent. In fact, the word "agent" does not appear in any of the briefs Garfield Plaintiffs filed in connection with the cross-motions for summary judgment other than as the name of party in a case citation in Plaintiffs' opening brief. *See* Pls' Memo. of Law [154], at 5 (citing *General Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 159 (2005)).

Although the existence of an agency relationship typically is a question of fact, the Seventh Circuit has found that questions of fact can become questions of law when undisputed facts lead to only one reasonable inference. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 732 (7th Cir. 2014) (citing *Podolsky v. Alma Energy Corp.*, 143 F.3d 365, 370 (7th Cir. 1998) and *Lockwood v. Bowman Constr. Co.,* 101 F.3d

33

1231, 1235 (7th Cir. 1996)). The law is clear that it is Garfield Plaintiffs' burden to bring forth the facts that would show an agency relationship. *See Sphere Drake Ins. Ltd. V. American General Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (recognizing that the party alleging the agency relationship … bears the burden of proving its existence by a preponderance of the evidence"); *Jackson v. Bank of New York*, 62 F. Supp. 3d 802, 814 (N.D. Ill. 2014). The Court cannot draw inferences that are "supported by only speculation or conjecture," *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892–93 (7th Cir. 2003). A court also "need not accept as true [the non-moving party's] *characterization* of the facts or [their] legal conclusions." *Nuzzi v. Nguyen*, 2009 WL 1409703, at *8 (C.D. Ill. May 20, 2009) (emphasis in original).

In *Sosa v. Onfido, Inc.*, 8 F.4th 631 (7th Cir. 2021), the Seventh Circuit recognized that "[t]he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." 8 F.4th at 641 (citing *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). In that case, the Seventh Circuit noted that the plaintiff offered little to show that it had an agency relationship with the defendant and did not offer any evidence to show that the defendant exercised control over its activities, or that the plaintiff could affect legal relationships on the defendant's behalf. *Id.* In light of Illinois law that elements of control and authority are essential to establish agency and the lack

of any evidence offered by the plaintiff to support those elements, the Seventh Circuit concluded that the district court properly determined that the plaintiff failed to establish an agency relationship with the defendant. *Id.*

This Court similarly concludes that Garfield Plaintiffs have not submitted sufficient evidence (aside from Baroncini's "eyes and ears" characterization which the Court finds insufficient as a matter of law) to establish the requisite elements of an agency relationship between GNY Mutual and Grganto.[16] That is a necessary predicate for their argument that Grganto's alleged statement that a storm caused the loss at the Building is a party admission thereby allowing Basara to testify about it. [17] The Court also notes for the record that Garfield Plaintiffs' claim that there was mutual agreement that a storm caused damage at the Building on June 28, 2019 is completely contradicted by their own admission of GNY Mutual's Additional Statement of Material Fact ¶ 28:

> **AMF 28: *The June 28, 2019 storm did not cause any power outage at Plaintiffs' Building.***
> Ex. 66, Dr. Webster ' s Opinion Rep. at pp. 4, 14-15, 18-32.
> Ex. 55, Webster Decl. at 4-7.
> Ex. 31, Claxton Opinion Report at PDF pp. 21-22.

---

[16] While the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). A merely cognizable issue of fact is insufficient to deny summary judgment, and an opposing party must present sufficient evidence to enable a reasonable jury to render a verdict in its favor. *See Anderson*, 477 U.S. at 251-52; *Hobgood v. Illinois Gaming Board*, 731 F.3d 635, 643 (7th Cir. 2013). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

[17] The Court notes that Basara also testified: "I can't speak to any kind of definite decisions that were made by GNY because I don't remember." GNY's Opposition Brief [177], at 8-9 (quoting Pls' Ex. 3 [155-4], Basara Dep. at 102:9-21).

35

**RESPONSE:** Admit.

Pls' Resp. GNY's Add'l SOF [186], at ¶28. The Court, therefore, reiterates its conclusion as discussed above that Basara's testimony about any alleged statement made by Grganto or purported mutual agreement that a storm on June 28, 2019 caused the damage at issue is classic hearsay offered for the truth of the matter asserted and does not fall within any exclusion.

### 3. GNY Mutual's lightning verification check does not create a material disputed fact that a storm occurred on June 28, 2019 and caused damage to the Building

Garfield Plaintiffs next point to Baroncini's testimony that GNY Mutual had a lightning verification check for June 28, 2019 that "confirmed there were at least six lightning strikes on the date of loss within three miles of the property" as additional admissible evidence in the record on which they rely to show that a storm occurred on June 28, 2019. *See* Pls' Ex. 4 [155-5], Baroncini Dep. at 13:1-3. Counsel for Garfield Plaintiffs seems to suggest that this lightning verification check is a material fact that establishes that a storm occurred on June 28, 2019 and caused the alleged damage to the Building. The law, however, is clear that "it is not enough to show that a loss *may* have occurred. [Insureds] must prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under the policy." *Harbor House Condominium Ass'n,* 915 F.2d at 318. In the Court's view, the mere fact that GNY Mutual had a lightning verification check within three miles of the Building does not tend to show one way or the other, and certainly not to a "reasonable degree of certainty," that *a storm on June 28, 2019 caused damage to the Building*.

36

Further, looking at the deposition transcript more closely, the Court finds that Baroncini's testimony is not as persuasive as Plaintiffs argued at the March 20, 2026 hearing:

> Q. Did you take into consideration that Mr. Thurow, your hired consultant, did find that a lightning storm damaged the transformer on the insured's property and the thunderstorm caused the power loss on January [sic] as it relates to the January [sic] 28, 2019 loss?
>
> A. I don't know to what extent he confirmed a lightning storm occurred. We took the insured's reported first notice of loss as a storm event happening on its face value, and we ran a lightning verification check that did confirm that there were at least six lightning strikes on the date of loss within three miles of the property. I think to that extent they assumed that those two things put together would confirm that a lightning storm did occur on that date.
>
> Q. And then did you make a determination at any point in time whether or not the lightning storm was actually the cause of the power outage?
>
> A. We didn't confirm either way whether or not that that was actually true because we were not -- we were not given any documentation that the insured -- that we requested of the insured or we were not able to talk to them under oath.
>
> Q. Well, you were offered to take their examinations under oath by their counsel. Did you?
>
> A. Offering to take their EUO or their examination under oath is secondary to getting the documentation from them that we requested. We can't question them about much if we don't have the documents in front of us to question them about.
>
> Q. It's your position that you didn't have the necessary documentation to take the examination under oath?
>
> A. Correct.
>
> *　　*　　*
>
> Q. Let me just back up for a second. GNY never made a determination as to what caused the damage on the Garfield property that resulted in the claim; is that right?

37

A. Other than how it was reported and the lightning verification check that we have, we did not receive anything specifying exactly what happened.

Pls' Ex. 4 [155-5], Baroncini Dep. at 12:22-24-13:1-14; 17:1-7.

In the Court's view, this additional evidence that Garfield Plaintiffs belatedly rely on does not create a disputed issue of material fact that would preclude summary judgment. Even assuming Garfield Plaintiffs could put before a jury Baroncini's testimony, there is an evidentiary gap between evidence of a lightning strike occurring within three miles of the Building on June 28, 2019 and evidence that a lightning strike or rain storm caused damage to the Building that can be characterized as a covered loss under the Policy in question on that date. The Court finds that Garfield Plaintiffs cannot overcome this evidentiary gap as a matter of law particularly when considered in conjunction with the following material facts that Garfield Plaintiffs admit: (1) "The June 28, 2019 storm did not cause any direct physical damage to Plaintiffs' Building itself, or to exterior or interior building components." (Pls' Resp. GNY's Add'l SOF [186], at ¶27); and "The June 28, 2019 storm did not cause any power outage at Plaintiffs' Building." (Pls' Resp. GNY's Add'l SOF [186], at ¶28).

For these reasons, the Court concludes that Baroncini's testimony does not create a material fact dispute that would allow Garfield Plaintiffs to get to a jury.[18]

---

[18] The law is clear and it bears repeating. A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, Inc.*, 477 U.S. at 248. Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties" (*id.* at 247) or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of

### 4. The Undisputed Fact that GNY Mutual Did Not Deny Plaintiffs' Claim Because It Was Not a Covered Loss Is Immaterial

Garfield Plaintiffs' last argument made at the March 20, 2026 hearing is that GNY Mutual's Denial Letter, which was issued on August 3, 2021, did not mention whether or not there was a storm on June 28, 2019 or that Plaintiffs' claim was not a covered loss, and therefore, GNY Mutual cannot now argue that Plaintiffs' claim is not a covered loss. The Court disagrees. This argument attempts to shift the burden of proof from Plaintiffs to GNY Mutual to disprove that a storm occurred and caused damage to the Building on June 28, 2019 when, in fact, the law is clear that it is Garfield Plaintiffs' threshold burden to show that a fortuitous event occurred that caused damage to the Building on that date and the alleged losses for which they submitted their insurance claim. *See Terraces Condo. Ass'n*, 2022 WL 847478, at *3; *Johnson Press*, 339 Ill.App.3d at 871 (recognizing that it is the insured's burden to show that a loss occurred and the loss resulted from a fortuitous event). It is Garfield Plaintiffs' contention that the fortuitous event is a storm that occurred on June 28, 2019 and caused damage to the Building. Only after Plaintiffs establish a prima facie case does the burden shift to GNY Mutual to affirmatively demonstrate that the alleged loss is not covered by the policy at issue. *See Terraces Condo. Ass'n*, 2022 WL 847478, at *3; *Johnson Press*, 339 Ill.App.3d at 871.

---

the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White*, 829 F.3d at 841. Once the party moving for summary judgment demonstrates the absence of any disputed issues of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol*, 698 F.3d at 564. The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann*, 673 F.3d at 751.

GNY Mutual does not dispute that it never decided one way or the other whether a storm occurred on June 28, 2019, and that it did not deny coverage on the basis that the claim was not a covered loss. Garfield Plaintiffs, however, seem to be arguing that because GNY Mutual did not make the determination that there was not a fortuitous event on June 28, 2019 that caused damage to the Building, it is precluded from making that argument now on summary judgment. The Court disagrees. GNY Mutual did not need to address the issue upon which Garfield Plaintiffs now focus in its Denial Letter so its failure to do so proves nothing. GNY Mutual denied Garfield Plaintiffs' insurance claim for other reasons set forth in its Denial Letter of August 3, 2021, that did not depend on whether a storm damaged the Building on June 28, 2019 and caused a covered loss.

For all the reasons discussed above, Garfield Plaintiffs cannot rely on the speculative, hearsay, or unsubstantiated testimony of either Giordano or Basara about what occurred at the Building on June 28, 2919 in support of their own Motion for Partial Summary Judgment or to oppose GNY Mutual's Motion for Summary Judgment. Nor have they identified any other witness who has personal knowledge and could provide admissible testimony at trial to support their claim, or pointed to any other admissible evidence that supports their claim. The Court, therefore, concludes there is not sufficient admissible evidence in the record brought forth by Garfield Plaintiffs to show, as Plaintiffs argue, that there was a storm on June 28, 2019 that caused a power outage and/or surge at the Building and caused the damage for which they seek insurance coverage. Accordingly, Garfield Plaintiffs have failed

40

to meet their burden as a matter of law to establish a prima facie case that they have a bona fide claim for insurance coverage.[19]

E. **There Is Additional Substantial Undisputed Evidence in the Record that Shows There Was Pre-Existing Deterioration and Damage to the Building Prior to June 28, 2019**

Aside from the testimony on which the parties focus and that the Court has discussed above, GNY Mutual also submitted other material evidence about the condition of the Building prior to June 28, 2019 that undercuts Plaintiffs' position on summary judgment that a fortuitous event on June 28, 2019 caused the alleged damage and loss. These material facts, which Garfield Plaintiffs do not deny (and for the most part admit), show that the conditions in the Building that Garfield Plaintiffs reported to GNY Mutual and for which they seek insurance coverage likely existed well before June 28, 2019. The undisputed facts and Plaintiffs' admissions about the condition of the Building prior to June 28, 2019 are set forth below:

> 54. However, on February 14, 2019, a pump failure occurred in the mechanical room (located in the basement of 460 Garfield) where water was spraying everywhere. Exhibit 35, February 14, 2019 Email – RE Pump Failure. See also Ex. 21, Grganto Decl. at ¶ 9, Ex. 22, Thurow Decl. at ¶ 13(a) (sic); Ex. 23, Baroncini Decl. at ¶ 9(d); Exhibit 31, Claxton Declaration with enclosed Opinion Report, at PDF pp. 2, 10-11 (authenticating his report and outlining his findings on the timeline of events that occurred before the June 28, 2019 incident).

> **ANSWER: Admit.**

---

[19] It is important to note that the Court is not deciding one way or the other whether, in fact, a storm occurred on June 28, 2019 in the vicinity of the Building that caused a loss that would be covered under the Policy. The Court does not need to reach that question because Garfield Plaintiffs have not brought forth sufficient evidence to make a prima facie case that a fortuitous event occurred on June 28, 2019 that caused Plaintiffs to suffer a covered loss that can survive summary judgment. The Court's decision on the parties' cross-motions for summary judgment is based on the evidence in the record, not on what could have or might have been shown by evidence that is not in the record.

55. On March 27, 2019, the City's Property Standards Division inspected 460-480 Garfield and found various conditions not in conformance with City codes including electrical hazards; and this information was sent to various parties in a code violation letter dated April 8, 2019. These code violations were still present per letter dated May 14, 2019 (see Id., citing to) and letter dated June 28, 2019. See Claxton Opinion Rep., Ex. 31 at PDF p. 10, citing to Exhibit 36, April 8, 2019 Code Violation Letter; Exhibit 37, May 14, 2019 Code Violation Letter; Exhibit 38, June 28, 2019 Code Violation Letter. April 8, 2019 Code Violation Letter; Exhibit 37, May 14, 2019 Code Violation Letter; Exhibit 38, June 28, 2019 Code Violation Letter.

**ANSWER**:  **The Plaintiffs lack sufficient knowledge to admit or deny the statement in paragraph 55.**[20]

56. On May 30, 2019, Plaintiffs' property manager, Giordano, reported several maintenance issues with the Building and that the sump pump and/or drain was backing up into the basement, stating that "all of this work is delayed maintenance that is now coming due all at once because of neglect". Exhibit 39, May 30, 2019 Email–RE Work is Delayed Maintenance. See also Ex.33, Giordano Tr. No.2 at pp. 70-72 (maintaining that the water back-up in May 2019 occurred because of delayed maintenance and neglect).

**ANSWER: Deny. (Plaintiffs' SOF, ¶ 7-9; Dkt. 155).**[21]

57. On June 6, 2019, Michels Plumbing ("Michels") arrived at the Building and met with Giordano and found at that time that only one pump of two was operational, and that the pump was not able to keep up with water coming into the basement. Michels also observed the electrical panel submerged under water on June 6, 2019. To remedy this, Michels began pumping water out by adding two temporary sump

---

[20] Garfield Plaintiffs state they lack sufficient knowledge to admit or deny GNY Mutual Statement of Fact No. 55. This is not a proper response to a statement of fact pursuant to Local Rule 56.1. The Court reviewed the underlying evidence to which GNY Mutual cites and that evidence supports its statement of fact, and Garfield Plaintiffs have not cited any contrary evidence. The Court, therefore, deems GNY Mutual's Statement of Fact No. 55 admitted.

[21] Garfield Plaintiffs deny  GNY Mutual's Statement of Fact No. 56 and cite to their own Statements of Facts ¶¶7-9 in support of their Motion for Partial Summary Judgment [153]. *See* Pls' SOF [155], at ¶¶7-9. Those facts, however, do not specifically respond to GNY Mutual's Statement of Fact No. 56, and the Court again reviewed the underlying evidence to which GNY Mutual cites and that evidence supports its asserted statement of fact. The Court, therefore, deems GNY Mutual's Statement of Fact No. 56 admitted.

pumps, among other things. Exhibit 40, Michels Invoice#52571; Exhibit 41, M. Michels Transcript at pp. 12-13, 17-28, 42-43, 50; Ex. 33, Giordano Tr. No. 2 at pp. 74-75. See also Ex. 9, Giordano Tr. No. 1 at pp. 43-45, 80 (explaining that the pump motor controller went out on June 6 and was never replaced before June 28, 2019; and that the two 5hp sump pump system stopped working all together around June 6, 2019).

**ANSWER: Admit.**

58. On June 6, 2019, the City's Fire Department responded to the Building at 1416 HRS due to smoke from the basement electrical panel and later reported that water was touching the electrical panel. At 1432 HRS, ComEd responded at the request of the Fire Department, but power was not disconnected. Exhibit 42, Aurora FD Incident Report #19-9008489; Exhibit 67, Fire Captain Abraham Sprinkler Transcript at pp. 11-24 (discussing the June 6, 2019 event and explaining that he personally observed the electrical panel submerged under water on such date). See also Ex. 33, L. Giordano Tr. No. 2 at p. 75 (admitting that basement electrical panels were smoking on June 6, 2019 because of water intrusion).

**ANSWER: Admit**.

59. In a June 7, 2019 email, Giordano reported that there was a "major issue with the second sump pump in the basement shutting down". Exhibit 43, June 7, 2019 Email–RE Second Pump Shutting Down; Ex. 33, Giordano Tr. 2 at p. 92.

**ANSWER: Admit.**

60. On June 11, 2019, Plaintiffs received a recommendation and a pump replacement quote from Metro for the two main 5hp sump pump system (motor and pumps only, not including discharge piping and valves). Exhibit 44, June 11, 2019 Email–RE Metro Pump Quote; Ex. 9, L. Giordano Tr. No. 1 at pp. 55-57. See also Ex. 8, R. Basara Tr. at 56 (acknowledging that "an open motor like what is used to pump the water out of the Garfield property, if it were to be submerged in water, it would cause pump failure."); Exhibit 65, G. Long Transcript at pp. 14-18, 39 (Plaintiffs' electrician testifying, among other things, that the pump motors/controller are not submersible and located on a platform just about 2-3 feet above grade); Ex. 34, L. Giordano Tr. No. 3 at 172-174 (admitting that the basement flooding would have been remediated prior to June 28, 2019, if Plaintiffs installed replacement pumps with a new controller).

**ANSWER: Admit.**

61. On June 12, 2019, at 2319 HRS, the Aurora Fire Department was called to the Building for an activated fire alarm and found water running down the walls into electric panels; and the fire alarm would not reset. Exhibit 45, Aurora FD Incident #19-9008876 and Exhibit 46, Customer Activity Report. The Fire alarm panel was not reset out of alarm mode until June 28, 2019 when Alarm Detection Systems (ADS) techs were onsite and reset the alarm panel. Exhibit 58, ADS Service Summary; Exhibit 59, June 2019 Customer Activity Report. The fire alarm panel was in a "trouble alarm" (not fully functional) from July 6, 2018 to March 31, 2020, per activity records provided by ADS. Exhibit 60, 2018 Customer Activity Report.

**ANSWER: Admit.**

62. On June 13, 2019, Michels added additional pumps to keep up with water in the basement. Ex. 40, Michels Invoice #52571; Ex. 41, M. Michels Tr. at pp. 35-36, 42.

**ANSWER: Admit.**

GNY's SOF [156], at ¶¶54, 55, 56. 57. 58, 59, 60, 61; Pls' Answer to GNY's SOF [175], at ¶¶54, 55, 56. 57. 58, 59, 60, 61.

Garfield Plaintiffs also admitted the following additional statements of facts that GNY Mutual submitted in response to Plaintiffs' statements of facts:

**AMF 22:** The electrical panels and switchgears were damaged by water and moisture intrusion before the June 28, 2019 incident and were not repaired or replaced by Plaintiffs before June 28, 2019. Ex. 5, Plaintiffs' Answers to Requests to Admit ("RTA") at RTAs 9-10, 12, admitting they did not repair or replace any of the MEP equipment before June 28, 2019. Ex. 31, Claxton Report at PDF pp. 13, 15-16, 21, discussing the damage to the basement electrical panels, finding that all photographs produced of electrical panels (before/after) June 28, 2019 showed rusting and degradation of the main panels and the conditions reflecting improper operation that could lead to a transformer fuse that was otherwise operating to turn off power, opining that the improper maintenance to the electrical equipment exposed to water and high humidity levels is known to lead to failure of the equipment, and concluding that the pre-existing conditions at the Building, due to lack

44

of maintenance, deterioration, and moisture intrusion were the cause of the electrical switchgear panel failure on June 28, 2019. Ex. 41, Michels Dep. at pp. 12-13, 17-28, 42-43, 50, Plaintiffs' plumber testifying that the electrical panels submerged under water on June 6, 2019 and "smoke was coming out of them". Ex. 12, Garcia Dep. 38:5-40:3; 55:2-15, Plaintiffs' on-site property manager testifying that personally observed the electrical panel being submerged under water in early June 2019, noting that Giordano and Michels were there and that the workers were wearing fishermen boots because the water levels were so high. Ex. 67, Aurora Fire Captain Abraham Sprinkler Dep. at pp. 11-24, testifying that he personally observed the electrical panel submerged underwater on June 6, 2019, and authenticating the Aurora FD Incident Report #19-9008489. Ex. 33, Giordano Dep. No. 2 at p. 75, admitting that basement electrical panels were smoking on June 6, 2019 because of water intrusion.

**RESPONSE: Admit.**

**AMF 23:** Giordano and Plaintiffs were aware of the "critical pump" failures before the June 28, 2019 incident but never repaired or replaced the pumps or any of the related pump components before June 28, 2019. Ex. 31, Claxton Report at PDF pp. 10-11, 17-19, 21, discussing the pump failures in February 2019, May 2019, early-June 2019, identifying photographs of the deteriorated conditions of pump components in October 2018 and early-June 2019, opining that the pre-loss pump failures caused water to flood the basement level and exposed the electrical equipment to water and high humidity levels, and concluding that the preexisting conditions at the Building, due to lack of maintenance, deterioration, and moisture intrusion were the cause of the electrical switchgear panel failure on June 28, 2019. Ex. 5, Plaintiffs' Answers to Requests to Admit ("RTA") at RTAs 9-10, 12, admitting they did not repair or replace any of the MEP equipment before June 28, 2019. Ex. 41, Michels Dep. at pp. 12-13, 25, 28, 42-43, 50, testifying that (1) the housing pipe, located directly above one of the pump motors, was cracked and that water was spraying out of the housing onto the electrical motor on June 6, 2019 , and (2) only one pump of two was operational, and that the pump was not able to keep up with water coming into the basement. Ex. 32, BTR Engineering Report at GA.SUPP _2003-2005, 2013, 2019-20, recommending in January 2019 that based on the dilapidated conditions of the Building components that the critical electrical and mechanical equipment be removed and replaced entirely. Ex. 33, Giordano Transcript No. 2 at pp. 54-55, 57, 60-61, testifying about the BTR recommendations and agreeing that John Thomas was warned by BTR as to what would happen if the electrical equipment was not replaced.

RESPONSE: Admit.

**AMF 24:** The allegations that power was restored (in-part or in-full) on June 28, 2019 is contradicted by the facts that ComEd did not restore power on June 28, 2019, that ComEd did not repair/replace any of the transformers, power wiring, or any other ComEd components on the pole on June 28, 2019, that ComEd only disconnected power due to damage to the electrical switchgear panels in the basement on June 28, 2019, that ComEd restored power to a portion of the Building on July 2, 2019 using existing ComEd equipment on the pole by only replacing a fuse link component, that there is no evidence of a power surge to the Building on June 28, 2019, and that there is no evidence that ComEd ever restored power to the basement main service switchgear panels after June 28, 2019. Ex.31, Claxton Opinion Report at PDF pp. 7, 11-12, 14, 20-22.

RESPONSE: Admit.

**AMF 25:** The allegation that June 28, 2019 incident "damaged the Building's life-safety systems, triggered evacuation, and ultimately rendered the entire building uninhabitable" is contradicted by the facts that several critical building code and life-safety violations (collectively, "code violations") were present before June 28, 2019 but not cured by Plaintiffs before the June 28, 2019 outage, that Plaintiffs were aware of several additional defects to the Building's mechanical, electrical, and plumbing ("MEP") equipment, that Plaintiffs elected not to cure the code violations and/or the MEP defects before the June 28, 2019 incident, or after the June 28, 2019 incident while at the same allowing tenants to continue to reside at the Building in July 2019 leading to criminal charges against Giordano in 2019, the Building being ordered to vacate in August 2019, John Thomas entering a demolition agreement with the City in January 2020, and eventually the Demolition action being filed by the City in September 2021 after Plaintiffs did not take the necessary steps to demo the Building or otherwise remediate the code violations. Ex. 68, Curley Dep. at pp. 19, 21-24, 28, 30, 33, 38, 72-73, 83-84 (discussed above in response to PL SOF 6). Ex. 26, Chesnutt Dep. at pp.14-17, 19, 22-23, confirming the historical list of code violations in the 2017 and 2018 code violations. Ex. 31, Claxton Decl. at ¶¶ 6-12, discussing his findings on causation, and the criminal charges against Plaintiffs and Giordano after the June 28, 2019 incident. Ex. 32, BTR Engineering Report at GA.SUPP _ 2003-2005, 2013, 2019-20. Ex. 33, Giordano Transcript No. 2 at pp. 54-55, 57, 60-61. Ex. 5 at RTA 33, Plaintiffs admitting entered into an agreement with the City in January 2020 to demolish 460-480 Garfield, in exchange for the City foregoing the certain fines and penalties assessed to the owners. Ex. 5 at RTA 34,

Plaintiffs admitting they never completed the appropriate documentation requirements that were required to obtain a demolition permit from the City of Aurora to demolish its entire Building. Ex. 5, Plaintiffs' Answers to Requests to Admit ("RTA") at RTAs 9-10, 12.

**RESPONSE: Admit.**

**AMF 26:** The June 28, 2019 storm did not cause any direct physical damage to Plaintiffs' Building that is specifically identified within the list of building code violations and life safety violations identified and attached to the City's September 2021 demolition complaint. Ex. 68, Curley Dep. at pp. 19, 21-24, 28, 30, 33, 38, 72-73, 83-84. Ex. 26, Chesnutt Dep. at pp.14-17, 19, 22-23 Ex. 31, Claxton Decl. at ¶¶ 6-12 and at PDF pp. 21-22 Ex. 5 at RTAs 9-10, 12, 33-34

**RESPONSE: Admit.**

**AMF 27:** The June 28, 2019 storm did not cause any direct physical damage to Plaintiffs' Building itself, or to exterior or interior building components. Ex. 66, Dr. Webster's Opinion Rep. at pp. 4, 14-15, 18-32 (no significant storm or storm outage occurred at or within 5-miles of Plaintiffs' Building on June 28, 2019). Ex. 55, Webster Decl. at ¶¶ 4-7 (authenticating report and reiterating there is no evidence of any meteorological outage that occurred at or within the vicinity of the Building). Ex. 31, Claxton Opinion Report at PDF pp. 21-22 (opining that (1) the pre-existing conditions at Plaintiffs' Building, due to lack of maintenance, deterioration, and moisture intrusion, were the cause of an electrical switchgear panel failure on June 28, 2019; (2) there is no evidence of a power surge to the Building on June 28, 2019; (3) there is no evidence of direct storm damage occurring on June 28, 2019 to the electrical power supply, electrical transformers, or electrical supply components outside the Building; and (4) there is no evidence that ComEd ever restored power to the basement main service switchgear panels after June 28, 2019).

**RESPONSE: Admit.**

GNY's Add'l SOF [178], at ¶¶22, 23, 24, 25, 26, 27; Pls' Resp. to GNY Add'l SOF [186], at ¶¶22, 23, 24, 25, 26, 27.

These admitted facts are material and completely undercut Garfield Plaintiffs' claim that a fortuitous event on June 28, 2019 caused the alleged damage to the

Building. These undisputed facts confirm that the damage to the Building that Plaintiffs attribute to a storm on June 28, 2019 existed prior to that date, including water damage and damage to the electrical panels and equipment. Significantly, as documented above, Garfield Plaintiffs also admit that the alleged June 28, 2019 storm "did not cause any direct physical damage to Plaintiffs' Building itself, or to exterior or interior building components." Pls' Resp. to GNY Add'l SOF [186], at ¶27.

Summary judgment is the time for the parties to put their evidentiary cards on the table. The Seventh Circuit has recognized that "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (cleaned up). Construing the facts in Garfield Plaintiffs' favor, as the Court must do when evaluating GNY Mutual's Motion for Summary Judgment [153], the Court finds that Garfield Plaintiffs have not met their burden as a matter of law and brought forth sufficient admissible evidence to show that a fortuitous event occurred on June 28, 2019 that caused damage to the Building. There is no admissible evidence in the record that creates "a genuine dispute of material fact" to support Garfield Plaintiffs' claim that a storm occurred on June 28, 2019 and that the alleged storm, in fact, damaged the Building.

Again, to be clear, the Court is not deciding one way or another that a storm did or did not occur on June 28, 2019 in the vicinity of the Building. Nor does it need to do so. Rather, the basis of the Court's decision is that Garfield Plaintiffs have not

48

brought forth admissible evidence that such a storm occurred and caused damage to the Building on that day sufficient to satisfy their prima facie burden as a matter of law. Garfield Plaintiffs' lack of admissible evidence coupled with the undisputed material facts and Plaintiffs' admissions set forth above that there were pre-existing conditions present at the Building prior to June 28, 2019, in which electrical panels and switchgears were damaged by water and moisture intrusion, and were not repaired or replaced by Garfield Plaintiffs before that date, compel the Court to conclude that no rational trier of fact could conclude Garfield Plaintiffs have satisfied their threshold burden to establish a prima facie case for an insurance coverage claim. *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *White*, 829 F.3d at 841; *Carrol*, 698 F.3d at 564. *Hannemann*, 673 F.3d at 751. The Court, therefore, finds as a matter of law and based on the undisputed material facts that no rational trier of fact could return a verdict for Garfield Plaintiffs on the admissible record evidence. Accordingly, the Court concludes that GNY Mutual is entitled to summary judgment on Count I as a matter of law.[22]

---

[22] Because the Court has found that no reasonable factfinder could conclude that Garfield Plaintiffs established a prima facia case that a fortuitous event occurred on June 28, 2019 and caused damage to the Building and, therefore, could not return a verdict for Garfield Plaintiffs, the Court declines to address GNY Mutual's alternative arguments that (1) even if Garfield Plaintiffs could establish their prima facia case, the alleged losses are excluded under express terms of the Policy relating to water damage and deferred maintenance; (2) Garfield Plaintiffs breached the "Loss Conditions" and "Concealment, Misrepresentation or Fraud" provisions of the Policy; and (3) Garfield Plaintiffs' claims for vandalism, demolition, and total loss were late and are time-barred.

## II. Plaintiffs' Counts II and III Fail as a Matter of Law

Because the Court has concluded that Garfield Plaintiffs cannot state a prima facie case for insurance coverage under GNY Mutual's Policy, the Court finds that Garfield Plaintiffs' breach of contract claim (Count II) and their claim that GNY Mutual engaged in unreasonable and vexatious conduct in violation of Section 155 of the Illinois Insurance Code (Count III), both of which are predicated on Garfield Plaintiffs having a viable insurance claim, also fail as a matter of law.

In Count II, Garfield Plaintiffs assert a breach of contract claim against GNY Mutual, arguing that GNY Mutal's failure to reasonably investigate Plaintiffs' insurance claim and failure to issue a timely or meaningful coverage determination on their claim materially breached its obligations under the Policy. *See* Pls' Memo. of Law [154], at 7-11. This argument, however, assumes that Garfield Plaintiffs have met their burden to establish their prima facie case that they have a bona fide insurance claim, which for the reasons discussed above, the Court has concluded Plaintiffs failed to establish their prima facie case.

None of the cases that Garfield Plaintiffs cite stand for the proposition that they are entitled to insurance coverage as a matter of law because GNY Mutual failed to perform a reasonable investigation of their insurance claim. Garfield Plaintiffs have tried to put the proverbial cart before the horse by challenging GNY Mutual's claims-handling conduct and application of the Policy's exclusions, but as explained above, the Court need not consider all of those arguments unless and until Plaintiffs bring forth sufficient admissible evidence that a storm occurred on June 28, 2019 and

caused damage to the Building. For the reasons discussed above, Garfield Plaintiffs have failed to do that. Therefore, Plaintiffs' alternative theory that GNY Mutual breached some contractual obligation fails as a matter of law.

In Count III, Garfield Plaintiffs also seek damages pursuant to Section 155 of the Illinois Insurance Code based on their conclusory statement that GNY Mutual engaged in vexatious conduct and unreasonably denied coverage. *See* Pls' Memo. of Law [154], at 11-12. Section 155 provides an extracontractual remedy to policyholders when an insurer's conduct is vexatious and unreasonable in denying coverage and refusing to pay a claim. *See Kush v. American States Insurance Co.,* 853 F.2d 1380, 1385 (7th Cir. 1988); *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F. Supp. 855, 863 (N.D. Ill. 1984). To recover under Section 155, however, an insured first must succeed in establishing the insurer's unreasonable denial of coverage. *See Lemko Corp. v. Fed. Ins. Co.,* 70 F. Supp. 3d 905, 921 (N.D. Ill. 2014) ("In short, claims under § 155 cannot be successful if there is no coverage, or even if there is a bona fide dispute about whether coverage exists."); *Burton Wells, Ltd. v. Indian Harbor Ins. Co.,* 2009 WL 8463694, at *2 (N.D. Ill. July 13, 2009) (holding that under Section 155 of the Illinois Insurance Code, the plaintiff "must first establish that it is entitled to coverage before it can prove that Defendant acted in bad faith").[23]

---

[23] *See also Markel Int'l Ins. Co. Ltd. v. Montgomery*, 2020 Ill. App. (1st) 191175, 178 N.E.3d 637 (Ill. App. 2020) (finding that an insurance company's failure to defend was not vexatious and unreasonable under Section 155 because the policy at issue did not provide coverage for the underlying lawsuit); *O'Rourke v. Access Health, Inc.,* 282 Ill. App. 3d 394, 406 (1996) ("[D]efendant could not have committed the vexatious and unreasonable conduct necessary for section 155 relief when no benefits are owed."); *Hermitage Insurance Co. v. Action Marine, Inc.,* 816 F. Supp. 1280 (N.D. Ill. 1993) (concluding that claim for bad faith and vexatious conduct under Section 155 cannot be maintained when insurer rightfully refuses coverage

Here, the Court has concluded as a threshold matter that Garfield Plaintiffs have not satisfied their prima facie burden that they have a viable claim for insurance coverage under the Policy at issue. Garfield Plaintiffs, therefore, do not have a claim for breach of contract against GNY Mutual as a matter of law when they do not have a viable coverage claim in the first instance. Garfield Plaintiffs, therefore, do not have a claim as a matter of law that GNY Mutual engaged in unreasonable and vexatious conduct in violation of Section 155 of the Illinois Insurance Code.

Accordingly, the Court finds that GNY Mutual also is entitled to summary judgment on Count II and Count III as a matter of law.

**CONCLUSION**

The Court has viewed the factual record as a whole based on the parties' motions for summary judgment and has been mindful to consider each motion separately with regard to burdens of proof and favorable inferences required for the non-movant in each motion. For all the reasons discussed in this Memorandum Opinion and Order, Greater New York Mutual Insurance Company's Motion for Summary Judgment [152] is granted, and Garfield Aurora I LLC's and Garfield Aurora II LLC's Motion for Partial Summary Judgment [153] is denied. Further, Greater New York Mutual Insurance Company's Motion to Strike Hearsay

---

under a policy exclusion); *Weeks v. Aetna Insurance Co.,* 150 Ill.App.3d 90, 93 (1986) (holding that a defendant did not engage in vexatious and unreasonable conduct necessary for Section 155 relief when the plaintiff was not entitled to the insurance benefits in the first instance).

Statements of Plaintiffs/Giordano/Basara [177] is denied. Judgment is entered for Defendant Greater New York Mutual Insurance Company. Civil case terminated.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 2, 2026